Courtney **MITCHELL** and Teresa **Markin, Appellants**

v.

John **RAMSEY, Tri–State Delta Chemicals, Inc., d/b/a United Agri Products, Mid–South, Appellees.**

No. CA 10–565.

Court of Appeals of Arkansas.

Jan. 5, 2011.

Timothy Oliver Dudley, Little Rock, Lohnes Tiner, Harrisburg, for appellant.

Kyle Ray Wilson, Gary D. Marts, Jr., Little Rock, for appellee.

RITA W. GRUBER, Judge.

This case has been to this court previously. In our decision dismissing the earlier appeal for lack of finality, *see Mitchell v. Ramsey*, CA 07–1190, 2008 WL 4287333 (Ark.App. Sept. 17, 2008) (unpublished), we set forth the case's history as follows:

Appellants Courtney L. Mitchell and Teresa Markin, individually and in their representative capacities as administrators of the estate of Tyson Massengill, appeal the August 13, 2007 order of the Crittenden County Circuit Court wherein the trial court granted the summary judgment motion of appellees John Ramsey and Tri–State Delta Chemicals, Inc., d/b/a United Agri Products, Mid–South (UAP). The trial court found appellants' claim of negligence against Ramsey inconsistent with appellants' claim against the manufacturer, which had been settled previously. The issue presented on appeal is whether the trial court erred in granting summary judgment. . . .

In this wrongful death and survival action, appellants filed suit against appellees and others contending that appellees' negligence caused the death of decedent, Tyson Massengill. Massengill was killed when the pick-up truck he was driving was struck by the arm of a field sprayer driven by appellee Ramsey, who was employed by appellee UAP. In their second amended complaint filed April 14, 2005, appellants claimed that Ramsey was negligent by operating the vehicle in a careless manner as evidenced by a failure to keep a proper lookout and failure to maintain proper control; that he operated the vehicle at an unreasonable speed in light of conditions, without a proper escort, without the requisite safety precautions for its width, without the required lamp

or flag marker, and without the required lamps; and that he operated an oversized vehicle and unsafe vehicle in violation of the Arkansas Code.

Appellants also sued Case Corporation, which manufactured the field sprayer, and Gemini Enterprises, Inc., which leased the field sprayer to appellees. Appellants claimed the field sprayer was defective because the arm on the sprayer came down while the sprayer was in transit. . . .

. . . .

Appellees Ramsey and UAP filed a third-party complaint against Case Corporation for contribution, should appellees be held liable. Before trial, appellants settled their claims against Case Corporation and Gemini Enterprises. However, the third-party complaint was not dismissed.

Appellees filed a motion for summary judgment, arguing that because appellants had alleged that the field sprayer was defective, and that the defect was the cause of the arm of the field sprayer deploying while it was in transit, appellants could not take the alternative position that appellee Ramsey was negligent in failing to stow the arm of the field sprayer before moving up the highway. Appellees also argued that appellants' claims regarding appellees' negligence in failing to register the field sprayer should be summarily dismissed because no proximate cause could be proven. Finally, appellees argued that there was no evidence before the court that warranted imposition of punitive damages. Appellants responded by claiming that the doctrine of inconsistent positions did not apply because they pled alternatively; that appellees' violation of the law was a proximate cause of appellants' damages; and that the evidence war-

rants the submission of punitive damages to the jury.

The trial court granted appellees' motion for summary judgment by order filed August 13, 2007. . . .

*Mitchell,* slip op. at 1–3. Because the summary judgment order left issues outstanding, we dismissed.

On remand, appellees filed another motion for summary judgment, arguing that the first summary judgment had resolved all of the issues concerning negligence in the operation of the field sprayer and that only the registration and permitting issue remained. They asserted that they were entitled to summary judgment on that issue because a permit was not required at the time of the accident, and even if it had been, any statutory violation was not a proximate cause of the accident. They supported this motion with the affidavit of Don Hartlein, who was UAP's Operations Manager responsible for registering its vehicles for that area, who stated:

5. The Case field sprayer in question in the above-referenced case was not registered in April 2002 as UAP relied on Arkansas Code Annotated § 27–35–102 which exempted the field sprayer from the registration requirement as it is considered an article of husbandry.

6. It has come to my attention that earlier this year the Arkansas Supreme Court ruled that Arkansas Code Annotated § 27–35–102 was superceded by a subsequently enacted statute. As a result, UAP is now moving forward to register all implements like the field sprayer in accordance with Arkansas law.

7. Had UAP known that Arkansas Code Annotated § 27–35–102 had been superceded, it would have registered the Case field sprayer at issue and the field sprayer would have been registered on April 15, 2002, the day of the accident.

Therefore, the sprayer would have been operating in the same manner, at the same location and at the same time as it was on April 15, 2002.

In response, appellants referred to the permit regulations for the movement of oversize and overweight vehicles promulgated by the Arkansas Highway and Transportation Department. The circuit court granted the motion for summary judgment, ruling that its first order had included all claims other than the registration and permitting issue, on which appellees were entitled to summary judgment. The court stated that registration and permitting were not required at the time of the accident, and that, even if they had been required at that time, the lack of registration and permitting did not constitute proximate cause. The circuit court dismissed all of appellants' claims, along with appellees' third-party complaint against Case Corporation and their cross-claims against Gemini Enterprises, the lessor of the equipment. Appellants then pursued this appeal.

Summary judgment may be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated and the party is entitled to judgment as a matter of law. *Bisbee v. Decatur State Bank*, 2010 Ark. App. 459, 376 S.W.3d 505. The moving party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.* When the movant makes a prima facie showing of entitlement, the respondent must meet proof with proof by showing genuine issues as to a material fact. *Id.* When there are genuine questions of material fact with regard to a party's intent, summary judgment is improper. *Id.* On appeal, we need only decide if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. *Id.* In making this decision, we view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.*

In their first point, appellants argue that the trial court erred in granting summary judgment to appellees because neither the doctrine of inconsistent positions nor judicial estoppel apply to alternative pleading. They contend that, from the beginning of this case, they have alleged two alternative causes of the accident; in their second amended complaint, they asserted that the boom on the field sprayer was *either* left down by Ramsey *or* it came down improperly. A plaintiff is allowed to allege alternative theories of liability. *See George v. Jefferson Hosp. Ass'n*, 337 Ark. 206, 987 S.W.2d 710 (1999); *Odom v. Odom*, 232 Ark. 229, 335 S.W.2d 301 (1960). Appellants contend that the trial court erred in finding that their expert, Douglas Muster, opined that the *sole* cause of the accident was a design defect in the field sprayer; that they never adopted the position that the accident was caused solely by a design defect, but that it was caused, at least in part, by Ramsey's negligence; and that Muster also opined that the accident was caused by Ramsey's negligence in, among other things, operating the sprayer in violation of Arkansas law.

It is true that a party is bound by his pleadings and the allegations therein and cannot maintain a position inconsistent therewith, and that a litigant is not permitted to assume wholly inconsistent positions on the same issue in the same case. *Parsons Dispatch, Inc. v. John J. Jerue Truck Broker, Inc.*, 89 Ark. App. 25,

199 S.W.3d 686 (2004). Appellants did not, however, assume inconsistent positions in settling with Case Corporation and asserting their negligence claims against appellees. In their second amended complaint, appellants stated:

22. The collision between the two vehicles occurred in the Plaintiff's lane of traffic when the extended boom on the case field sprayer crushed the lower portion of the roof of the cab on the driver's side of Tyson Massengill's vehicle, killing Tyson Massengill. The boom either was left down by the operator, John Ramsey, or came ⌊6down improperly.

23. The Defendant Ramsey was operating this field sprayer at night on a state highway without escort vehicles in front of or behind it, without roper [sic] lighting and at a time so late at night that is [sic] was a violation of state law punishable by a tree [sic] thousand ($3,000.00) fine. All of his actions were done in accordance with the policies of [UAP].

24. The left spray boom was illegally crossing into the Plaintiff's lane of traffic and crushed the Plaintiff's vehicle killing Tyson Massengill.

Appellants alleged that Ramsey was negligent in operating the oversize, unsafe vehicle on a state highway in such a careless manner as to evidence a failure to keep a proper lookout or to maintain proper control, at a speed greater than was reasonable and prudent under the conditions; without a proper escort; without the requisite safety precautions for vehicles of excessive width; without the required lamps or flag marker; and more than thirty minutes past sunset, in violation of several Arkansas statutes. Appellants alleged that UAP was negligent in failing to train and supervise Ramsey; in failing to assure that their drivers do not operate their vehicles in a reckless, careless, and dangerous way; in permitting their drivers to operate defective vehicles; and in having a policy of driving vehicles in violation of state law, which prohibits driving vehicles of this width thirty minutes past sunset. Appellants asserted that, as a result of the concurring negligence and strict liability of appellees, Case Corporation, and Gemini Enterprises, jointly and severally, Massengill was killed.

It is true that Muster's report stated that the "but for" cause of the accident was the fact that the left-side boom of the applicator Ramsey was driving escaped from its cradle and deployed to an extended position, without the knowledge of or a controlled action by ⌊7Ramsey, and struck the cab of Massengill's truck. However, the report goes on to make the following statements about Ramsey's role in the accident:

4. **I hold the opinion that a contributing cause of the accident in which Mr. Massengill was fatally injured were the negligent actions of Mr. John S. Ramsey.** Specifically, Mr. Ramsey drove a piece of farm machinery an inch under 12 feet wide at its governor-controlled maximum speed of 38 mph on a highway he knew was only 21 feet wide. He did this in the dark of night, knowing that the footprint of his vehicle was just under 12 feet wide and that, in most stretches of the highway, the shoulders were downward sloping to ditches within 6 to 8 feet outboard from the edge of the crowned paved surface. When he entered the westbound lane of the highway with his headlights on about 6 feet above ground level shining directly into the eyes of anyone in the eastbound lane, he knew—or should have known—it was chancy, indeed, for him and for anyone in the eastbound lane. Thus, I hold the opinion that Mr.

Ramsey was negligent in a situation that called for, fairly screamed for, caution and care.

Muster also addressed UAP's role in the accident:

6. I hold the opinion that a contributing cause of the accident in which Mr. Massengill was fatally injured is that Tri–State Delta Chemicals, Inc., was negligent in its training and supervision of its employee, Mr. Ramsey. Specifically, it is difficult to accept the introductory experience of Mr. Ramsey as a "training program". He did not mention seeing or reading the "Operations Manual" for the Applicator. He went from sweeping floors and general clean up work to watching Mr. Andrews operating his machine, then he did a twenty-nine acre field in about forty-five minutes with Mr. Andrews in the cab of the Applicator monitoring his work. A few days later, Mr. Kernodle watched him do a field from a position on the ground. End of his training program. It was not mentioned explicitly but this field work was done at several farms, so he must have traveled on the highways in the area to and from the UAP yard and between farms. How he learned the safety-oriented practices that comprise the "rules of the road"—if he did—is not mentioned. . . .

7. I hold the opinion that a contributing cause of the accident in which Mr. Massengill was fatally injured is that Tri–State Delta Chemicals, Inc., was negligent in approving policies and practices that permitted and encouraged its employees to drive the CASE II, Flex–Air, FLX4330 Applicator on the local highways, especially, when it knew or should have known that, the Transportation Regulations of the State of Arkansas, Section 27–35–201 and Section 27–35–206,

stated it was unlawful to do so. Specifically, in his deposition testimony, Mr. Kernodle made it clear that, when Mr. Ramsey drove onto the westbound lane of AR Highway 42, he was doing so with the approval of Tri–State Delta, that he did not consider it unusual for Mr. Ramsey to be driving the Applicator on a highway after 9:00 pm in the dark of night and that he considered Mr. Ramsey's actions "appropriate" and within the norms of behavior approved by Tri–State Delta for its Applicator operators. Further, Mr. Kernodle did not know the width of the CASE II, Flex–Air, FLX4330 Applicator, (142 3/4 inches) and that its width was in excess of the maximum permitted width of 102 inches and, thus, a clear statutory violation of the Transportation Regulations of the State of Arkansas.

In *Dupwe v. Wallace*, 355 Ark. 521, 140 S.W.3d 464 (2004), the supreme court held that the doctrine of judicial estoppel is simply a continuation of existing law expressed in the doctrine against inconsistent positions. The court stated that equitable estoppel, which may involve inconsistent positions taken outside of litigation, is similarly based on the inherent unfairness of permitting a party to take inconsistent positions and thereby obtain a benefit from them; a party should not be allowed to accept the benefit of a judgment or decree then question its validity or oppose the enforcement of its terms. The court concluded that the following elements must exist to state a *prima facie* case of judicial estoppel:

1. A party must assume a position clearly inconsistent with a position taken in an earlier case, or with a position taken in the same case;

2. A party must assume the inconsistent position with the intent to manipu-

late the judicial process to gain an unfair advantage;

3. A party must have successfully maintained the position in an earlier proceeding such that the court relied upon the position taken; and

4. The integrity of the judicial process of at least one court must be impaired or injured by the inconsistent positions taken.

355 Ark. at 533–34, 140 S.W.3d at 472. The court cautioned against an overly strict application of the doctrine of judicial estoppel, as it is intended to protect the integrity of the courts, not as a technical defense for litigants seeking to derail potentially meritorious claims.

Appellants contend that, regardless of the evidence about the defective field sprayer, appellees' negligence also caused the accident. We see no inconsistency between appellants' claims against Case and their claims against appellees, nor do we believe that they are attempting to manipulate the judicial process. The integrity of the judicial process will not be impaired by permitting appellants to proceed to trial against appellees. Accordingly, we reverse on this point.

In their second point, appellants contend that the trial court erred in granting summary judgment on the ground that appellees' violation of the law was not a proximate cause of the accident. They argue that Ramsey operated the field sprayer on a public highway, at night, in violation of the overwidth provisions of Arkansas Code Annotated section 27–35–206 (Repl.2004).[1] Appellants point out that, in *McMickle v. Griffin*, 369 Ark. 318, 254 S.W.3d 729 (2007), the supreme court held that the trial court had erred in refusing to give an instruction to the effect that a violation of section 27–35–206 was evidence of negli-

gence. They state that the statute was designed to protect the public from overwidth vehicles on the highway at night and that violation of that statute was a direct cause of the accident. Appellants add that Arkansas Code Annotated section 27–35–210 (Supp.1999) required that a permit be obtained for movement of an oversize vehicle, and that it was undisputed that the field sprayer exceeded the maximum width allowed on Arkansas highways without a permit at night. They stress that the Highway Department's regulations required appellees to apply for and obtain a permit before moving the overwidth vehicle; to follow a route established by the department; and to adhere to any other precautions established by the department, which appellees did not do. Appellants note that section 27–35–210 was in effect, and of notice to appellees, when the accident happened, and state that it would not be unfair to apply the statute in this case when it was not unfair for the supreme court to apply it in *McMickle.* .

In *McMickle*, the supreme court held that the trial court erred in refusing to instruct the jury to consider certain statutory violations (involving permitting, lighting, and speed) as some evidence of negligence, even though an older statute, Arkansas Code Annotated section 27–35–102 (Repl.1994), exempted implements of husbandry. In doing so, it addressed the statutes at issue in this case:

McMickle first points to the circuit court's ruling with regard to the permit requirement for farm tractors. That relevant statute reads in part:

(a) No vehicle operated upon the highways of this state shall have a total outside width, unladen or with load, in excess of one hundred two inches (102″) excluding certain safety

---

1. This statute was most recently amended in 1992.

devices as designated by the state, unless a greater width is authorized by *special permit* issued by competent authority as provided in § 27–35–210. . . .

Ark.Code Ann. § 27–35–206(a) (Repl. 2004) (emphasis added).

Two additional statutes are touched on by the parties in connection with the necessary permit. First, § 27–35–210, a codification of a 1955 statute, provides, in pertinent part:

(a)(2)(A) It shall not be necessary to obtain a permit for nor shall it be unlawful to move any vehicle or machinery in excess of the maximum width prescribed in § 27–35–206 which is used for *normal farm purposes* only such as, but not limited to, hay harvesting equipment, plows, tractors, bulldozers, combines, etc., where:

(i) It is hauled on a vehicle licensed as a natural resources vehicle;

(ii) The vehicle or machinery is being transported by a farm machinery equipment dealer or repairman in making a delivery of new or used equipment or machinery to the farm of the purchaser; or

(iii) The vehicle or machinery is being used in making a pick up and delivery of the farm machinery or equipment from the farm to a shop of a farm equipment dealer or repair person for repairs and return to the farm; and

(iv) The movement is performed *during daylight hours* within a radius of fifty (50) miles of the point of origin thereof and no part of the movement is upon any highway designated and known as a part of the national system of interstate and defense highways or

any fully controlled access highway facility.

Ark.Code Ann. § 27–35–210(a)(2)(A)(i)–(iv) (Repl.2004) (emphasis added).

The parties also debate a statute in a different subchapter, which provides:

The provisions of this subchapter governing size, weight, and load shall not apply to fire apparatus, road machinery, or to implements of husbandry, including farm tractors, temporarily moved upon a highway, or to a vehicle operated under the terms of a special permit issued as provided in this subchapter.

Ark.Code Ann. § 27–35–102 (Repl.2004).

McMickle argues that, to the extent § 27–35–102 contradicts the more limited exemption in § 27–35–210, the latter controls as the later-enacted statute. . . .

. . . .

We hold that this conflict between § § 27–35–102 and 27–35–210 is irreconcilable and results in a repeal by implication of § 27–35–102 for purposes of farm tractors traveling on highways at night. That is because the General Assembly clearly took up the subject matter of permits for farm tractors anew in the more current statute.[2] We further hold that McMickle was entitled to an instruction based on § 27–35–210. We reverse and remand on this point.

369 Ark. at 323–25, 254 S.W.3d at 736–37.

We agree with appellants that the same reasoning the court followed in *McMickle* should apply here. Even though the supreme court did not hold until 2007 that section 27–35–102 was repealed by implication by section 27–35–210, the latter statute was on the books and of notice to appellees, just as it was to the alleged

---

**2.** Section 27–35–210 was enacted by Act 98 of 1955, whereas section 27–35–102 was enacted by Act 300 of 1937.

tortfeasors in *McMickle*, in April 2002 when Tyson Massengill died.

■ We also agree with appellants that whether appellees' violation of the law was the proximate cause of the accident was a question of fact for the jury. Proximate cause becomes a question of law only when reasonable minds could not differ. *Craig v. Traylor*, 323 Ark. 363, 915 S.W.2d 257 (1996). Appellants did not rely only upon the lack of a permit for each movement of an oversize vehicle but also on the Highway Department's regulations governing the subject, which required the use of signs and escort vehicles as well as the department's determination of the route that the vehicle must take. In light of Muster's report allocating some of the responsibility for the accident to appellees; the department's regulations governing transportation of such vehicles; and the *McMickle* decision, we hold that the issue of proximate cause was a question of fact and reverse on this point.

In their third point, appellants argue that the trial court erred in granting summary judgment to appellees on appellants' other negligence claims because appellees never moved for summary judgment on them. *See* Ark. R. Civ. P. 56(c)(1) and (2). The other claims were that Ramsey was negligent in failing to maintain proper control of the field sprayer; in operating the vehicle in a careless manner; in failing to maintain proper control of the vehicle; and in going too fast for existing conditions. They assert that those allegations were not inconsistent with claiming that the field sprayer was defective and that they have expert testimony that Ramsey's vehicle was across the center line at the time of the accident. Because these claims were not inconsistent with their claim that the

field sprayer was defective, we also reverse on this point.

Reversed and remanded.

ROBBINS and BROWN, JJ., agree.