2011 Ark. App. 140

**WILDLIFE FARMS II, LLC, Appellant**

v.

**Greg ROBINSON and Jeff Robinson, Appellees.**

**No. CA 10–278.**

Court of Appeals of Arkansas.

Feb. 23, 2011.

---

Stuart W. Hankins, North Little Rock, for appellant.

David O. Bowden, Little Rock, for appellees.

JOHN B. ROBBINS, Judge.

Appellant Wildlife Farms, II, LLC, appeals from the Monroe County Circuit Court's refusal to enter judgment against appellees Greg Robinson and Jeff Robinson on appellant's counterclaim in an action initiated by a complaint listing the plaintiffs as Tommy Robinson, Carolyn Robinson, and appellees, individually, and as partial owners of AG PRO of Arkansas, Inc., and AG PRO Farms, II. The defendants were appellant, its majority members, DBJ Investments (and its individual members, Boyd Rothwell, Diana Rothwell, John Lewis, Kimberly Lewis, Daniel Barnett, Sr., and Sally Barnett), and B & L Thompson Investments, LLC (and its individual members, William Thompson and Elizabeth Thompson). We affirm the trial

court's refusal to enter default judgment against appellees but reverse and remand its decision on the merits of appellant's counterclaim.

AG PRO, Inc., along with DBJ Investments and B & L Thompson Investments, had ownership interests in appellant. By the end of 2002, its owners were involved in a number of lawsuits, including Monroe County Circuit Court case number CV 2002–103. To satisfy a judgment for appellant, AG PRO, Inc.'s interest in appellant was extinguished. Tommy and Carolyn Robinson and the farm entities entered bankruptcy. Appellant's main asset, a large tract of farm land, was set to be sold at auction on December 19, 2006. On December 18, 2006, attorney Roy Lewellen filed a complaint in this independent action in Monroe County on behalf of all of the Robinsons and the farm entities alleging that appellant and the other defendants had fraudulently concealed the fact that they had entered into a contract with a federal agency for a Wetland Reserve Program easement. They asked the court to set aside the earlier judgment, cancel the auction scheduled the next day, or direct that the auction proceeds be deposited with the court. Mr. Lewellen signed the complaint and filed a motion for a temporary restraining order. He and Tommy Robinson signed the notice of lis pendens. Appellees did not sign any of those pleadings. Tommy Robinson signed a verification of the complaint and motion the next day.

The circuit court held a hearing on December 19, at which appellant argued that the complaint should be dismissed. The court concluded that it had no jurisdiction over Tommy and Carolyn Robinson because of the bankruptcy proceeding but that it did have jurisdiction over appellees. It ruled that, because appellees had previously entered into a settlement agreement with appellant, they could not contest the sale of the land. It added that it would dismiss appellees from the lawsuit because they had known about the agreement with the federal agency.

On December 27, 2006, appellant filed a motion to dismiss this lawsuit, arguing that the court lacked subject-matter jurisdiction over Tommy and Carolyn Robinson and the farm entities because of the pending bankruptcy proceeding. It further argued that appellees' causes of action were barred by res judicata and collateral estoppel as a result of the previous orders entered in state court, when appellees had settled with appellant. With the motion, appellant filed copies of a settlement decree entered in Monroe County Circuit Court case number CV 2005–88–3 and a partial satisfaction of judgment in case number CV 2002–103 stating that appellant's judgments against appellees had been satisfied. On January 2, 2007, Mr. Lewellen filed a withdrawal of the lis pendens, which stated that this action had been dismissed with prejudice.

On January 22, 2007, appellant filed a counterclaim against appellees, alleging that, by joining as plaintiffs in this action, appellees had breached their previous settlement agreement with it. Appellant stated that it had spent $110,000 preparing for the auction; that the title insurance company had issued a revised title commitment, which prevented appellant from delivering good title at the auction; and that the news of the filing of the complaint and notice of lis pendens had a detrimental effect on the number of registered bidders. Appellant sought damages and attorney's fees.

On January 29, 2007, the circuit court sent a letter to the parties asking appellant's counsel, Stuart Hankins, to prepare an order dismissing appellees' causes of action, in accordance with its ruling from

the bench at the close of the hearing held on December 19, 2006. On February 20, 2007, appellant filed a motion for entry of default judgment against appellees because of their failure to file an answer or a responsive pleading to appellant's counterclaim within twenty days after service on Mr. Lewellen. On February 27, 2007, the circuit court entered an order dismissing the complaint with prejudice. It held a hearing on August 21, 2007, at which Mr. Lewellen explained his failure to file an answer to the counterclaim or respond to the motion for default judgment by stating that appellees had not retained him to represent them. Mr. Hankins argued that appellees had not been dismissed as plaintiffs until after he had filed the counterclaim and presented evidence of appellant's damages ($102,817.81, the cost of marketing the property for sale), through the testimony of Boyd Rothwell. Mr. Lewellen advised the court that the bankruptcy court had found him and Tommy Robinson in contempt for filing this action; had sent them to jail until they produced a certified copy of the release of the lis pendens; and had entered a judgment against Tommy Robinson for auction costs and attorney's fees.

On November 16, 2007, the circuit court entered an order finding that appellees had been properly served with the counterclaim by service upon Mr. Lewellen prior to the entry of the dismissal order; that they were in default; and that appellant was required to prove its damages caused by appellees. The court stated that the bankruptcy court had found that Carolyn Robinson and appellees were not liable for appellant's damages but that Tommy Robinson was liable. The court said that the bankruptcy court had found that Mr. Lewellen had filed this action at the request of Tommy Robinson and on behalf of himself, Carolyn, and appellees, without consulting them, and that appellees had exercised

no control in filing the complaint. The court also found that appellees were, for all intents and purposes, out of the case as of December 19, 2006, when it had ruled from the bench that it would dismiss the complaint. The court found no culpability on the part of appellees; ruled that a judgment should not be entered against them; and directed that the counterclaim against them be dismissed.

Appellant then moved for reconsideration. The court concluded that it had not allowed appellant an opportunity to present its case-in-chief and granted the motion for trial on the merits. On March 10, 2008, the circuit court ruled that, until the order dismissing appellees was entered, Mr. Lewellen remained appellees' attorney of record; that he did not file an answer; that appellees were in default; and that they were not allowed to present evidence in defense of the counterclaim; however, appellant was not entitled to judgment on the counterclaim without establishing proof of liability and damages. The court found that appellant's damages were $102,817.81. It also recounted the bankruptcy court's rulings concerning appellees' lack of culpability for the filing of the complaint in this action. It quoted from orders entered by the bankruptcy court on April 17, 2007 (finding that Mr. Lewellen had filed this complaint on behalf of Tommy Robinson, Carolyn Robinson, and appellees without ever consulting Carolyn and appellees); August 30, 2007 (holding Mr. Lewellen and another attorney liable for $10,000 to appellant); and October 12, 2007 (granting judgment to appellant for damages of $102,817.81 and $24,417.95 in fees against Tommy Robinson). The circuit court stated that whether appellant's damages were a direct result of appellees' actions would be determined at a later trial. The bankruptcy court's orders, however, were not introduced into evidence.

The circuit court entered an order on November 4, 2008, finding that Mr. Lewellen was appellees' attorney of record when he was served with the counterclaim, to which appellees filed no answer, and that they were technically in default. The court continued that, upon reconsideration, appellant was estopped to pursue the counterclaim because it knew that the court had orally dismissed appellees from the lawsuit at appellant's request. The court also ruled that judicial estoppel applied, and that in any event, the bankruptcy court had concluded that appellees were not responsible for appellant's damages. The court acknowledged that the bankruptcy orders were not admitted into evidence, but said that no one had questioned the authenticity of the documents supplied to the court, and concluded that appellant was not entitled to judgment against appellees because of their failure to file an answer. Appellant filed another motion for reconsideration or for a trial on the merits. The court set aside its November 4, 2008 order and directed that a trial on the merits of the counterclaim be held.

The court held another hearing on April 21, 2009, at which the parties tried the merits of appellant's counterclaim. Tommy Robinson testified that, when he first met with Mr. Lewellen at his residence to ask for his help about the upcoming sale, he told him that he was doing so on his own, not on his sons' or anyone else's behalf, and that he intended to be the only plaintiff; Mr. Lewellen had simply used the style of the previous lawsuit to list the plaintiffs. He added that appellees had paid no attorney's fees for the filing of this action. Mr. Hankins then asked him to read a portion of his testimony at the bankruptcy court's contempt hearing, in which he testified that, before he went to Mr. Lewellen's, his family told him to do what he thought was best; that they felt the same way that he did; and that they had been robbed of their interest in appellant and forced out of their farming operation. Mr. Hankins also had him read a portion of his wife's testimony, in which she had stated that she had approved of his filing of this action.

Greg Robinson testified that he had not discussed the filing of this lawsuit with his father and had not known that he was a named plaintiff before the bankruptcy contempt hearing. He said that he may have heard that appellees had been dismissed because they had signed a settlement agreement; that this was not his lawsuit; and that he had no knowledge of a counterclaim being filed against him. Jeff Robinson testified that he had nothing to do with this lawsuit; that he had first learned of it after the sale had been stopped; that he had heard that it had been taken off of his hands; and that he had not discussed its filing with his parents.

In its final order, the circuit court explained:

17. The court previously found that Mr. Lewellen was the attorney of record for Greg and Jeff Robinson when he was served with the Counterclaim filed by the defendants. The court is still of that opinion and so finds again. Ordinarily, . . . Greg and Jeff Robinson would be in default and would not be allowed to contest their liability but would be allowed to contest the amount of damages. This is the prior ruling of the court. However, upon reconsideration, *sua sponte*, the court now concludes that the defendants are estopped to pursue the default counterclaim because of the theory of estoppel. The defendants should be estopped to claim a default when they knew, through their attorney, or should have known that the court had already orally dismissed Greg and Jeff Robinson

from the lawsuit. That dismissal was based on the request, via responsive pleadings, of the defendants. The defendants requested that the entire lawsuit be dismissed; the court concluded that the claims of Greg and Jeff Robinson had been settled with the defendants and, therefore, they lacked standing to participate in the litigation. The defendants, in fact, received what they desired; that being, the dismissal of the claims of Greg and Jeff Robinson.

18. It is true that the court did not direct Mr. Hankins to immediately prepare the precedent; eventually, the court did ask him to do so at his suggestion or offer. The defendants were granted part of the relief they sought and later sought to seek a remedy from Greg and Jeff Robinson through the very litigation in which the defendants had obtained their removal and dismissal. The defendants should be estopped to seek a remedy from Greg and Jeff Robinson after they had successfully removed them from the litigation.

The court also found that the bankruptcy court had concluded that appellees were not responsible for appellant's damages and that judicial estoppel applied. Appellant then pursued this appeal.

Appellant argues that the trial court erred in ruling that the service on appellees' attorney was void. Appellees have not, however, appealed from the circuit court's finding that Mr. Lewellen was representing them when appellant served him with its counterclaim. Appellees had the burden of appealing from that aspect of the court's order, and the effect of their failure to do so was to leave the court's finding on that issue intact. *See Taylor v. George*, 92 Ark.App. 264, 212 S.W.3d 17 (2005); *Van Curen v. Arkansas Prof'l Bail Bondsman Licensing Bd.*, 79 Ark.App. 43, 84 S.W.3d 47 (2002). In light of the trial court's finding that appellees were validly served, we reverse its ruling that the service was void.

Nevertheless, the circuit court was not required to enter a default judgment against appellees, as appellant argues. The trial court had the discretion to recognize that a default had occurred without being bound to enter judgment. The standard by which we review the granting or denying of a motion for default judgment is whether the trial court abused its discretion. *Benedetto v. Justin Wooten Constr., LLC,* 2009 Ark. App. 825, 372 S.W.3d 391. Default judgments are not favorites of the law and should be avoided when possible. *Id.* In 1990, the supreme court amended Arkansas Rule of Civil Procedure 55 by making it more lenient, and allowing more discretion to trial courts in deciding whether to enter a default judgment. The revised rule reflects a preference for deciding cases on the merits rather than on technicalities. Ark. R. Civ. P. 55 (2010). The reporter's notes to Rule 55 explain that, in deciding whether to enter a default judgment, the court should take into account the factors utilized by the federal courts, including: whether the default is largely technical and the defendant is now ready to defend; whether the plaintiff has been prejudiced by the defendant's delay in responding; and whether the court would later set aside the default judgment under Rule 55(c). Whether a trial court abused its discretion in making this ruling should be decided on a case-by-case basis. *Benedetto, supra.*

Appellant argues that the trial court abused its discretion because the court's ruling from the bench at the December 19, 2006 hearing that it would dismiss appellees' claims did not relieve Mr. Lewellen from continuing to serve as appellees' counsel (and filing an answer and a response to the motion for default judg-

ment), and because the trial court had found that appellees were validly served and that appellees were in default. On the totality of the circumstances, especially Mr. Lewellen's confusion about whether appellees were still in the lawsuit and appellees' testimony that they had not intended to be plaintiffs, we cannot say that the trial court abused its discretion in denying the motion for default judgment.

Appellant further argues that the trial court erred in ruling that it was estopped to pursue its counterclaim because of the doctrines of equitable estoppel, judicial estoppel, and res judicata, affirmative defenses that were not raised by appellees. The essential elements of equitable estoppel are (1) the party to be estopped must know the facts; (2) the party must intend that his conduct shall be acted on or must so act that the party asserting estoppel has a right to believe the other party so intended; (3) the party asserting estoppel must be ignorant of the facts; and (4) the party asserting estoppel must rely on the other party's conduct to his detriment. *Larco, Inc. v. Strebeck*, 2010 Ark. App. 263, 379 S.W.3d 16. The doctrine of judicial estoppel is simply a continuation of existing law expressed in the doctrine against inconsistent positions. *Mitchell v. Ramsey*, 2011 Ark. App. 9, 381 S.W.3d 74. The following elements must exist to state a prima facie case of judicial estoppel:

1. A party must assume a position clearly inconsistent with a position taken in an earlier case, or with a position taken in the same case;

2. A party must assume the inconsistent position with the intent to manipulate the judicial process to gain an unfair advantage;

3. A party must have successfully maintained the position in an earlier

proceeding such that the court relied upon the position taken; and

4. The integrity of the judicial process of at least one court must be impaired or injured by the inconsistent positions taken.

*Dupwe v. Wallace*, 355 Ark. 521, 533–34, 140 S.W.3d 464, 472 (2004). Equitable estoppel, which may involve inconsistent positions taken outside of litigation, is similarly based on the inherent unfairness of permitting a party to take inconsistent positions and thereby obtain a benefit from them; a party should not be allowed to accept the benefit of a judgment or decree then question its validity or oppose the enforcement of its terms. *Mitchell, supra.*

Appellees acknowledge that it is problematic whether the elements of judicial estoppel were met in this case but urge us to follow the long-standing principle that we may affirm the trial court if its decision was correct for any reason. *See Weisenbach v. Kirk*, 104 Ark.App. 245, 290 S.W.3d 614 (2009). Instead, they argue, the trial court should have based its decision on the collateral estoppel aspect of res judicata. Collateral estoppel, also known as issue preclusion, bars relitigation of issues of law or fact previously litigated, provided that the party against whom the earlier decision is being asserted had a full and fair opportunity to litigate the issue in question and that the issue was essential to the judgment. *Foster v. Foster*, 2010 Ark. App. 594, 377 S.W.3d 497. To apply collateral estoppel, the following elements must be present: (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the judgment. *Id.*

We cannot, however, apply claim preclusion without the relevant bankruptcy court orders being included in this record. Without those orders, we have no way of knowing whether the bankruptcy court determined that appellees caused the complaint, *motion for restraining order,* and lis pendens to be filed in this action. For the same reason, judicial estoppel could not apply to any position that appellant may have taken in the bankruptcy proceeding. Moreover, we do not agree with the trial court's determination that appellant took inconsistent positions in the instant matter by moving to dismiss the appellees' complaint, and yet counterclaiming for the alleged damages resulting from the filing of such action. Therefore, even if appellees had pled equitable and judicial estoppel below, appellant's actions would not warrant their application.

Nevertheless, after a full hearing on the merits of appellant's counterclaim, the trial court was in a position to decide the ultimate issue of whether appellees breached the settlement agreement. We therefore reverse and remand for the learned circuit court to find, on the record already made, whether appellees breached that agreement.

Affirmed in part; reversed and remanded in part.

PITTMAN and GRUBER, JJ., agree.