2011 Ark. App. 445

**Jerri L. BISHOP, Individually and as Administratrix of the Estate of Guy Douglas Bishop, Deceased, Appellant**

v.

**TARIQ, INC., and Joe Fisher, Appellees.**

**No. CA 10–492.**

Court of Appeals of Arkansas.

June 22, 2011.

Rehearing Denied July 27, 2011.

660

Tony L. Wilcox, Scott J. Lancaster and Jeffrey O. Scriber, Jonesboro, Nicholas Lincoln Rogers, Little Rock, for appellant.

Michael Lynn Alexander and Rick Behring, Jr., Little Rock, for appellees.

JOSEPHINE LINKER HART, Judge.

Appellant Jerri Bishop filed this wrongful-death action after her husband drowned in a hotel swimming pool. A Pulaski County jury found in favor of the hotel's owner and manager, appellees Tariq, Inc., and Joe Fisher, leading to this appeal. For reversal, Mrs. Bishop argues that the circuit court erred in 1) excluding evidence that the hotel violated a state regulation requiring a lifeline between the pool's shallow and deep ends; 2) prohibiting evidence of other regulatory violations after hotel's counsel "opened the door" to such evidence during trial; 3) instructing the jury on comparative fault; and 4) denying a new trial after hotel's counsel made improper comments during closing arguments. The hotel cross-appeals from the denial of its motion for a directed verdict. We find merit in appellant's first point and reverse and remand on that ground. Our holding renders the cross-appeal moot.

Mr. and Mrs. Bishop and their eight-year-old son Steven were guests at the hotel. On the afternoon of March 27, 2008, Mr. Bishop and his son went swimming in the hotel's indoor pool. A security video depicted the two of them entering the shallow end after Mr. Bishop had looked into the deep end for several seconds. Upon entering the water, Mr. Bishop swam the length of the pool and returned to the shallow end. Mrs. Bishop was in the pool area in street clothes and eventually exited through a door leading to another part of the hotel. Mr. Bishop then put his son on his back and began walking toward the middle of the pool. At about the mid-point, he began to swim toward the deep end with his son on his back. There was no rope or lifeline across the center of the pool delineating the shallow and deep ends. After a few strokes, Mr. Bishop experienced some type of distress and began to thrash about in the water. His distress continued for a full minute until Mrs. Bishop rushed back into the pool area and ran toward a ring buoy mounted on a post. She attempted to unwind the rope attached to the buoy, but the amount of rope was too short, and the ring did not reach Mr. Bishop when she threw it. She then unwound additional rope and again threw the buoy into the pool. Young Steven swam to the ring and grabbed his father, and Mrs. Bishop pulled them to poolside. She held Mr. Bishop out of the water while Steven ran for help.

Mr. Bishop was later taken to a hospital, where he remained alive for three days before being pronounced dead. The record does not reveal the cause of his distress in the pool; however, his death certificate listed drowning as the cause of death.

On September 2, 2008, Mrs. Bishop sued the hotel for negligence, asserting that the hotel had violated numerous state swimming-pool regulations, including: 1) failing to report Mr. Bishop's drowning within seventy-two hours of its occurrence; 2) failing to provide proper depth markers in the pool; 3) failing to provide a lifeline between the shallow and deep ends of the pool; 4) failing to provide readily accessible life-saving equipment.[1] The hotel answered, denying any negligence but stating that the regulatory violations, if any, did not proximately cause Mr. Bishop's death. The hotel also pled the defense of comparative fault.

Before trial, the hotel moved in limine to exclude evidence of the alleged regulatory violations, arguing that such evidence was irrelevant and more prejudicial than pro-

---

1. Arkansas Code Annotated section 20–30–103(3) (Repl.2005) authorizes the Arkansas State Board of Health to promulgate regula-tions governing public swimming pools in the state.

bative. Ark. R. Evid. 401 & 403.[2] The circuit court granted the motion as to the post-accident reporting, depth-marker, and lifeline regulations, apparently concluding that a violation of those regulations would be irrelevant to the issues in the case. But the court denied the motion as to the remaining regulation, which required the hotel to provide "readily accessible and conspicuously mounted" lifesaving equipment consisting of one shepherd's crook and one ring buoy. As the result of the court's ruling, Mrs. Bishop proceeded to trial solely on the theory that the hotel was negligent in failing to place the shepherd's crook in a conspicuous location and failing to make the ring buoy readily accessible.

At trial, Mrs. Bishop testified that she lost precious seconds in her attempt to rescue her husband because the rope on the ring buoy was wound too tightly. She also said that she did not notice the shepherd's crook, which photographs revealed was lying on a table with pool towels. An Arkansas Department of Health employee similarly testified that the crook was not conspicuously mounted and that the ring buoy was not readily accessible. Additionally, hotel manager Joe Fisher testified that he preferred that the rope on the ring buoy be loose enough to lift and throw all at once rather than having to be unwound, as Mrs. Bishop had to do. By contrast, the hotel presented testimony from a pool inspector and a forensic engineer that the crook and ring buoys were in compliance with state regulations. The hotel also elicited testimony that it had "exceeded" state regulatory requirements by providing two ring buoys at the pool rather than one. Mrs. Bishop objected that the hotel's claim of excessive compliance "opened the door" to evidence of other regulatory violations,

which had been excluded in limine. The court's ruling in limine stood.

At the close of the evidence, the court instructed the jury on comparative fault over Mrs. Bishop's objection. The jury returned a general verdict in favor of the hotel, and this appeal and cross-appeal followed.

On direct appeal, Mrs. Bishop argues that the circuit court erred in excluding evidence of the hotel's failure to install a lifeline separating the shallow and deep ends of the pool. We review a trial court's decision to exclude evidence for an abuse of discretion. *McCoy v. Montgomery*, 370 Ark. 333, 259 S.W.3d 430 (2007). Applying that standard, we conclude that the circuit court incorrectly excluded evidence of the lifeline violation.

Relevant evidence means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ark. R. Evid. 401. It is enough if the evidence reasonably shows that a fact is slightly more probable than it would appear without the evidence. *Dooley v. Cecil Edwards Constr. Co.*, 13 Ark.App. 170, 681 S.W.2d 399 (1984). Here, the absence of a state-mandated lifeline had a tendency to make the hotel's liability for Mr. Bishop's death more probable. The violation of a government regulation is evidence of negligence. *See C.J. Horner, Inc. v. Moore*, 268 Ark. 1019, 597 S.W.2d 857 (Ark.App.1980). Further, as the trial court recognized, the purpose of a lifeline is to demarcate the shallow and deep ends of the pool and to provide a swimmer with something to grasp onto if necessary. Both of those considerations

---

**2.** The hotel also filed a motion for summary judgment on the ground that any violation of the regulations could not have proximately

caused Mr. Bishop's death. The circuit court denied the motion.

were pertinent to the issue of proximate cause in this case.

■ Proximate cause is generally a question of fact for the jury. *Mitchell v. Ramsey*, 2011 Ark. App. 9, 381 S.W.3d 74. Mrs. Bishop could reasonably have argued to the jury that her husband's foray into the deep end of the pool while carrying his son on his back could have been impeded or prevented had a lifeline been in place, thus reducing his injuries or making |₆his rescue more feasible. Moreover, while the hotel contends that Mr. Bishop's distress began in an area of the pool far removed from where the lifeline would have been strung, the video on which the hotel relies is fairly indistinct and does not show the potential placement of the lifeline or the onset of Mr. Bishop's distress with absolute accuracy. Thus, the absence of the lifeline as a rescue device cannot be deemed irrelevant based on the video.

■ It also cannot be said that the probative value of the lifeline violation is substantially outweighed by the danger of unfair prejudice. Ark. R. Evid. 403. The probative value of the violation is significant, as discussed above. Moreover, we discern no unfair prejudice in allowing proof that the hotel violated a state swimming-pool regulation that arguably contributed to a drowning death. We therefore reverse and remand on this point.

■ Mrs. Bishop argues further that the circuit court should have reversed its exclusion of the hotel's other regulatory violations because the hotel "opened the door" to such evidence. Specifically, she cites the hotel's claim during trial that it had exceeded state regulations by providing two ring buoys instead of one. The hotel's proof may well have left the impression that the facility was fully and even overly observant of state regulations

when in fact there was evidence to the contrary. But, Mrs. Bishop obtained no ruling from the trial court on this point. We cannot reach the issue of whether the court abused its discretion in the absence of a ruling. *See Boellner v. Clinical Study Ctrs.*, 2011 Ark. 83, 378 S.W.3d 745.

Mrs. Bishop contends next that the circuit court erred in instructing the jury on comparative fault. She claims that the comparative-fault defense is not applicable in an |₇"enhanced-injury" case. As this issue was preserved for our review and may arise on retrial, we address the merits.

■ The enhanced-injury doctrine, also known as the second-collision or crashworthiness doctrine, imposes liability based on the construction or design of a product that causes enhanced or greater injury in the course of or following an initial accident or collision, which was brought about by some independent cause. *Bass v. Gen. Motors Corp.*, 150 F.3d 842 (8th Cir.1998). Mrs. Bishop contends that the enhanced-injury doctrine governs this case because her husband's injuries were enhanced by the failure of the hotel's safety devices. She additionally points out that some jurisdictions have refused to apply the comparative-fault defense in an enhanced-injury case.

■ Arkansas has not recognized the enhanced-injury doctrine by name.[3] Even if we were to do so, however, we would not foreclose use of the comparative-fault defense. Our comparative-fault statute, Ark.Code Ann. § 16–64–122 (Repl. 2005), provides that, *in all actions for personal injuries or wrongful death in which recovery is predicated on fault,* liability shall be determined by comparing the fault chargeable to a claiming party

---

**3.** *But see Williams v. Mozark Fire Extinguisher Co.*, 318 Ark. 792, 888 S.W.2d 303 (1994), which contains a fact situation similar to most enhanced-injury cases.

with the fault chargeable to the party from whom he seeks to recover. Ark.Code Ann. § 16–64–122(a) (emphasis added). Fault, in turn, is defined to include *any* act, omission, conduct, risk assumed, breach of warranty, or breach of any legal duty which is a *proximate cause* of any damages sustained by any party. Ark.Code Ann. § 16–64–122(c) (emphasis added). The broad language chosen by our legislature contradicts Mrs. Bishop's claim that fault should not be compared in enhanced-injury cases; under our law, comparative fault is applicable to *all* actions for personal injury or wrongful death. We also note that the majority of jurisdictions allow consideration of a plaintiff's comparative fault in enhanced-injury cases. *See Restatement of Torts 3d—Products Liability,* § 16, cmt. f (1997).[4] Under these circumstances, the circuit court did not abuse its discretion in instructing the jury on comparative fault.

■■■ Mrs. Bishop's final argument concerns an allegedly improper remark made by the hotel's counsel during closing argument. Mrs. Bishop did not object to the remark or ask for relief when the remark was made. Her argument is therefore waived. *Swink v. Lasiter Constr.,* 94 Ark. App. 262, 229 S.W.3d 553 (2006).

For the reasons stated, we reverse and remand on direct appeal. Our ruling makes it unnecessary to reach the hotel's cross-appeal from the denial of its directed-verdict motion. The hotel based its motion on Mrs. Bishop's failure to produce expert medical testimony that Mr. Bishop would have survived if she had been able to get the ring buoy to him more quickly. Given that Mrs. Bishop may now present additional evidence of the hotel's regulatory violations, her proof will differ upon retrial. Consequently, any ruling by this court as to the sufficiency of her evidence during the first trial would be academic. *See generally Yu v. Metro. Fire Extinguisher Co.,* 94 Ark.App. 317, 230 S.W.3d 299 (2006).

Reversed and remanded on direct appeal; cross-appeal moot.

VAUGHT, C.J., and GLOVER, J., agree.

---

4. *See also Kelley v. Hyundai Motor Co.,* 2011 WL 1533456 (E.D.Ark.2011), ruling that Arkansas would allow the submission of comparative fault in an enhanced-injury case where, as here, a question of fact exists as to the cause of the plaintiff's damages.