SLIP OPINION

Cite as 2013 Ark. App. 665

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-13-183

| | |
|---|---|
| MICHAEL GARTMAN and KEMAL KUTAIT, Individually and on behalf of the Estate of Rebecca Kutait and the Wrongful Death Beneficiaries<br><br>APPELLANTS<br><br>V.<br><br>FORD MOTOR CO.<br><br>APPELLEE | **Opinion Delivered** November 13, 2013<br><br>APPEAL FROM THE HOT SPRING COUNTY CIRCUIT COURT [NO. CV-07-24-1]<br><br>HONORABLE CHRIS E WILLIAMS, JUDGE<br><br>AFFIRMED |

## JOHN MAUZY PITTMAN, Judge

In this products-liability case, appellants Michael Gartman and Kemal Kutait, as representative of his daughter Rebecca's estate, appeal from a jury verdict in favor of appellee Ford Motor Company. We affirm.[1]

The parties agree on the essential facts. On January 25, 2004, at approximately 3:00 a.m., Michael Gartman and his girlfriend, Rebecca Kutait, were involved in a one-vehicle accident on Interstate 30. Earlier that evening the couple had visited friends, and Michael consumed several beers. They left the gathering with Michael at the wheel of his Ford pickup. While driving on Interstate 30, Michael and Rebecca argued, and Rebecca grabbed the wheel. Michael could not control the vehicle, and it left the highway, colliding with

---

[1]We previously dismissed this appeal for lack of finality. *Gartman v. Ford Motor Co.*, 2012 Ark. App. 693. Appellants have now obtained a final order, giving us jurisdiction to proceed to the merits.

SLIP OPINION

several trees before coming to rest on its side. According to Michael, he and Rebecca did not sustain life-threatening injuries at that point, even though they were trapped in the truck. Several minutes after the crash, however, the truck caught fire. Passersby rescued Michael, who suffered serious burns. They could not save Rebecca, and she died in the fire. Michael's blood-alcohol content (BAC) after the accident measured .08.

In 2007, appellants sued appellee as the manufacturer of the truck. They claimed that Michael's injuries and Rebecca's death were caused by the truck's inability to withstand the crash without catching fire, *i.e.*, its lack of crashworthiness. At trial, appellants offered expert testimony that the truck caught fire due to a defect in the fuel line. Appellee defended on the grounds that the truck was properly designed and that Michael was partly at fault for causing the initial crash, due to his inability to control the vehicle while intoxicated. The jury found in favor of appellee, leading to this appeal.

## I. *Comparative Fault*

Over appellants' objections, the circuit court admitted evidence of Michael's alcohol consumption and BAC; instructed the jury that Michael's intoxication could be considered evidence of negligence; and instructed the jury on Michael's comparative fault. Appellants argue on appeal that the court's rulings were in error because any fault Michael may have borne in the initial crash was irrelevant, given the nature of their crashworthiness claim. We review the court's rulings for an abuse of discretion. *Washington v. Washington*, 2013 Ark. App. 54, ___ S.W.3d ___; *Gross & Janes Co. v. Brooks*, 2012 Ark. App. 702, ___ S.W.3d ___.

The crashworthiness doctrine recognizes that a manufacturer may be held liable for an enhanced or greater injury that occurs following an initial accident, which was brought about by some independent cause. *See Bishop v. Tariq*, 2011 Ark. App. 445, 384 S.W.3d 659. According to appellants, the injuries for which they sought compensation arose solely from the faulty manufacture or design of appellee's product, and not from any fault of Michael's in precipitating the crash. Consequently, they maintain, proof of Michael's alcohol consumption should not have been admitted into evidence or used as a basis for comparing fault.

We disagree with appellants' premise. Arkansas follows the majority view that a plaintiff's fault *is* relevant in a crashworthiness case for the purpose of apportioning the overall responsibility for damages. In *Bishop v. Tariq*, *supra*, we relied on the language of our comparative-fault statute to hold that a plaintiff's fault could be compared with a defendant's fault in a crashworthiness or enhanced-injury case. The comparative-fault statute, Arkansas Code Annotated section 16-64-122(a) (Repl. 2005), provides that, in *all actions* for personal injuries or wrongful death in which recovery is predicated on fault, liability shall be determined by comparing the fault chargeable to a claiming party with the fault chargeable to the party from whom he seeks to recover. The statute additionally provides that "fault" shall include *any* act, omission, conduct, risk assumed, breach of warranty, or breach of any legal duty which is *a* proximate cause of *any damages* sustained by any party. Ark. Code Ann. § 16-64-122(c) (Repl. 2005). This broad language and our holding in *Tariq* stand at odds with appellants' claim that a plaintiff's fault should not be compared to the defendant's in a crashworthiness case. *See also Williams v. Mozark Fire Extinguisher Co.*, 318 Ark. 792, 888

3

S.W.2d 303 (1994).  We further note that Arkansas recognizes that the acts or omissions of two or more persons may work together to produce damages.  *See Villines v. North Arkansas Regional Medical Center*, 2011 Ark. App. 506, 385 S.W.3d 360; AMI Civ. 501 (2012).

Appellants contend that their case is distinguished by the fact that the truck fire did not occur until fifteen or twenty minutes after the initial crash.  This time gap does not foreclose the application of comparative fault. It was for the jury to decide whether Michael's fault, if any, served as a proximate cause.[2]

Appellants also argue that the only actions relevant for comparing fault in a products-liability case are found in AMI Civ. 1014 (2012).  Such actions include the plaintiff's misusing the product in an unforeseeable manner, using the product beyond its anticipated life, or unforeseeably altering the product.  AMI Civ. 1014, however, does not purport to contain an exhaustive list of the ways in which a plaintiff may be at fault in a products-liability case. The Notes on Use accompanying AMI Civ. 1014 state that it may be used in conjunction with AMI Civ. 2101 (2012), the general comparative-fault instruction.

Finally, appellants argue that, even if evidence of Michael's alcohol consumption was relevant, it was more prejudicial than probative because the trial took place in a dry county, and because there is a "negative attitude in this country today toward drinking and driving." Rule 403 of the Arkansas Rules of Evidence (2013) provides that relevant evidence may be

---

[2]It is not clear whether the jury actually reached the issue of Michael's comparative fault—it answered only one verdict interrogatory, absolving appellee of liability.  But, because we cannot discount the possibility that the jury, in so finding, simply assigned a majority of the fault to Michael, we have chosen to address the merits of this issue.

SLIP OPINION

excluded if its probative value is substantially outweighed by the danger of unfair prejudice. We conclude that no unfair prejudice occurred. A dim view of drinking and driving is to be expected no matter what the circumstances or jurisdiction.

Based on the foregoing, we see no abuse of discretion in the circuit court's allowing evidence of Michael's alcohol consumption and instructing the jury on comparative fault.

## II. *Expert Testimony*

The circuit court excluded the testimony of appellants' expert, Dr. William Hickerson, who opined that Michael's BAC reading was unreliable due to his burn injuries. Appellants argue that Dr. Hickerson's testimony should have been admitted as reliable scientific evidence. Again, we apply the abuse-of-discretion standard of review. *Derry Berrigan & Co. v. KBS Leasing, Inc.*, 2013 Ark. App. 196.

Michael's BAC reading was taken by the Arkansas State Police approximately two hours after the accident and registered .08. Later, Michael was treated for his injuries by Dr. Hickerson, a certified plastic surgeon and general surgeon. During Dr. Hickerson's pretrial deposition, he stated that he was taught during his residency that a burn victim's blood-alcohol level could be falsely elevated due to metabolic acidosis. He testified that he worked with burn victims at a trauma center in Memphis and that he had admitted many patients with blood-alcohol content. He stated, however, that he was not "boarded" in toxicology, pathology, or hematology; that he had not published articles on toxicology or how burns affect BAC readings; and that he did not consider himself an expert in blood-alcohol concentration. He further testified that the only basis for his opinion that Michael's BAC

5

reading could be considered unreliable due to burn injuries came from courses he took during his residency many years earlier.

The circuit court ruled that Dr. Hickerson's opinion did not meet the test of admissibility set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). In *Daubert*, the United States Supreme Court held that a trial court must make a preliminary assessment of whether the reasoning or methodology underlying expert testimony is valid and whether the reasoning or methodology has been properly applied to the facts of the case. *Richardson v. Union Pacific Railroad Co.*, 2011 Ark. App. 562, 386 S.W.3d 77. The objective of a *Daubert* inquiry is to ensure the relevance and reliability of expert testimony and to make certain that the expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. *Bayer CropScience LP v. Schafer*, 2011 Ark. 518, at 17, 385 S.W.3d 822, 833 (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999)).

Many factors may bear on the inquiry into the reliability of the expert testimony. A key question is whether the scientific theory has been or can be tested. *Richardson*, 2011 Ark. App. 562, 386 S.W.3d 77. It is also significant whether the scientific community has accepted the theory. *Id.*, 386 S.W.3d 77. In any event, the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable. *Schafer*, 2011 Ark. 518, at 17, 385 S.W.3d at 833–34 (quoting *Kumho Tire Co.*, 526 U.S. 137).



Assuming that *Daubert* applied to the testimony offered by Dr. Hickerson, the circuit court did not abuse its discretion in excluding it. The doctor possessed a general knowledge of blood–alcohol levels, but his testimony regarding the effect of burns on blood alcohol was little more than anecdotal, based on teachings he remembered from his residency. He offered no science or expertise to support his opinion. We therefore affirm the court's ruling.

### III. *AMI Civ. 1013*

The court refused appellants' request to instruct the jury with a particular portion of AMI Civ. 1013 (2012), an instruction used in products-liability litigation involving two or more theories of liability. The jury in this case was instructed on strict liability and negligence, so AMI Civ. 1013 was generally applicable. Appellants, however, asked the court to include the following language in AMI Civ. 1013:

> With respect to proof of a defective condition, if you find that in the normal course of events no (injury) (death) (or) (property damage) would have occurred in the absence of some defect, then you are permitted, but not required, to infer that a defect existed.

Allowing the jury to infer the existence of a defect is necessary only when, in the absence of direct proof of a specific defect, the plaintiff must rely on circumstantial evidence that a defect existed. *See generally Petrus Chrysler-Plymouth v. Davis*, 283 Ark. 172, 671 S.W.2d 749 (1984); *Harrell Motors, Inc. v. Flanery*, 272 Ark. 105, 612 S.W.2d 727 (1981). Here, there were no mysterious malfunctions that necessitated reliance on circumstantial evidence. Instead, appellants pinpointed the fuel line as the defect and offered direct proof and expert testimony on the cause of the fire that led to their damages. Accordingly, they were not

prejudiced by the court's refusal to instruct the jury with the circumstantial-evidence portion

of AMI Civ. 1013.[3]

## IV. *Verdict Interrogatory*

Appellants' final argument is that the verdict interrogatory answered by the jury in

favor of appellee was confusing.  The interrogatory read as follows:

> Do you find by a preponderance of the evidence that there was fault on the part of Ford Motor Company which was a proximate cause of any damages plaintiff[s] Michael Gartman and Kemal Kutait, as administrator of the Estate of Rebecca Kutait, may have sustained?

The jury answered "no" to this interrogatory and returned their verdict in favor of appellee.

Appellants contend that the word "fault" in the interrogatory confused the jury because

it did not "ask the jury whether they found the vehicle uncrashworthy or that the fuel system

was defective."  Appellants' argument is procedurally barred.

No party shall assign as error the giving or the failure to give an instruction unless he

objects thereto before or at the time the instruction is given, stating distinctly the matter to

which he objects and the grounds for his objection.  Ark. R. Civ. P. 51 (2013).  Failure to

make a specific objection means that the issue has not been preserved for review.  *Agracat, Inc.

v. AFS-NWA, LLC*, 2012 Ark. App. 372.  At trial, appellants argued generally about the

concept of fault in a products-liability case, but they did not object to the court's use of the

---

[3]The exact basis for the court's ruling on this issue is unclear from the record. Nevertheless, we may affirm if the trial court was correct for any reason. *Winrock Grass Farm, Inc. v. Affiliated Real Estate Appraisers of Ark., Inc.*, 2010 Ark. App. 279, 373 S.W.3d 907.

SLIP OPINION

above interrogatory on the ground asserted on appeal.  Given the lack of a specific objection, we must affirm.

Affirmed.

GLADWIN, C.J., and WOOD, J., agree.

*Johnson, LLP*, by: *Gerald M. "Tracy" Johnson, III*; *SL Chapman LLC*, by: *Bradley M. Lakin* and *Robert J. Evola*; and *John Cole*, for appellants.

*Wright, Lindsey & Jennings LLP*, by: *Edwin L. Lowther, Jr.*, and *Gary D. Marts, Jr.*, for appellees.